JUSTICE McKINNON,
dissenting.
¶39 In my opinion the Court errs when it combs the record and plucks those facts it believes are relevant to an arrest for DUI, misplacing *471 them into its legal analysis of an investigative stop and, particularly, the statutory requirements concerning reinstatement of Brunette’s driver’s license. The findings made by the District Court do not support a determination of particularized suspicion to administer field sobriety tests, which was the basis for Brunette’s arrest for DUI and subsequent seizure of his license. Indeed, careful scrutiny of the record does not demonstrate particularized suspicion for DUI at any time until after the administration of the tests. The District Court labored under a misconception that Brunette’s failure to use a turn signal was objective evidence that by itself established particularized suspicion sufficient under § 61-8-403(4)(a)(i), MCA. In doing so, it failed to proceed further in judging and weighing the credibility of evidence to determine if it properly escalated into a particularized suspicion for administration of sobriety tests, particularized suspicion that Brunette was driving under the influence, and probable cause for Brunette’s arrest for driving under the influence. This Court errs by supplanting the District Court’s decision with its own and adding facts which were contested and at the heart of these proceedings — and, ultimately, the job of the District Court to resolve and evaluate within the proper legal framework.
¶40 We held in Hulse that field sobriety tests were searches that must be supported by particularized suspicion to believe the driver was intoxicated when operating a vehicle. Hulse, ¶ 38. We observed that an investigative stop for offenses which were not related to driving under the influence could nonetheless escalate into particularized suspicion.
Once a lawful stop is made, a police officer’s suspicions may become further aroused and the stop may become further prolonged and the scope enlarged as required by the circumstances, provided the scope of the investigation remains within the limits created by the facts upon which the stop is predicated and the suspicion which they arouse.
Hulse, ¶ 40 (emphasis supplied). We provided, by way of example, that if “an officer only observed an individual driving with a broken taillight and after making his initial stop he did not observe any signs of intoxication, he would not have particularized suspicion that the driver was driving under the influence, and, therefore, would be prohibited from administering field sobriety tests.” Hulse, ¶ 40.
¶41 Here, it was the task of the District Court, and not this Court, to assess the credibility of those facts which would support escalation into particularized suspicion for a belief that Brunette was driving under the influence. While the basis for the initial stop was undisputedly Brunette’s failure to use a turn signal, the District Court did not, *472 either verbally or in the court’s written order, assess, evaluate, or weigh the credibility of facts which would warrant the development of particularized suspicion that Brunette was driving while intoxicated. Indeed, it was highly contested whether the officer had any grounds to suspect Brunette was driving under the influence and whether the stop was pretextual. There was uncontested evidence that law enforcement made no observations of erratic driving, straddling the center line, wide turns, unnecessary acceleration or deceleration, stopping problems, etc. Indeed, the officer agreed that Brunette did not appear to have any driving problems at all. The pretextual nature of the initial stop, when the deprivation period was begun, and running the out-of-state license plates over forty minutes before making the stop were clearly troubling to the court.[1] In the context of these types of credibility issues, and the absence of any oral or written findings beyond Brunette’s failure to use a turn signal and test refusal, this Court errs in stepping into the shoes of the trial court and making those “implied” findings or misconstruing statements of the court into “oral findings.” The District Court’s remarks regarding watery eyes and a PBT were offered to guide counsel in the submission of its supplemental briefing, and cannot be construed as “oral findings” of the court to supplement its written order. Opinion, ¶ 33. Furthermore, the record does not establish at what point the officer made the observation of “watery eyes” and whether it was, in fact, part of the escalation into particularized suspicion for the sobriety tests and a belief that Brunette was driving under the influence. Significantly, the District Court made no finding that Brunette had any odor of alcoholic beverage, as this Court does, and stated on the record that he had “some concerns about [the] officer’s conduct.” The District Court’s singular focus on the objective nature of Brunette’s failure to use his turn signal strongly suggests that it deemed much of the officer’s other testimony as untrustworthy and questionable. Such a belief was *473 warranted given the circumstances of the investigation and, indeed, one of the bases for the stop — swerving and nearly crashing into another vehicle — evaporated following the officer’s observation during the hearing of his in-car video. The Court errs by attributing credibility to facts necessary to substantiate reasonable suspicion when the District Court refrained from doing so.
¶42 In a proceeding to reinstate a driver’s license pursuant to § 61-8-403(4)(a)(i), MCA, the court is limited to considering whether law enforcement had particularized suspicion to believe that the person had been driving while under the influence. The District Court’s singular conclusion that Brunette made a turn without using a turn single is insufficient to establish particularized suspicion to believe Brunette was driving under the influence. The District Court does not articulate those facts giving rise to an escalation of the stop and which would establish particularized suspicion for the administration of field sobriety tests and reasonable grounds to believe that Brunette was driving while under the influence. To the extent we misconstrue the District Court’s order and add to its findings, I dissent.
JUSTICE WHEAT joins the dissenting opinion of JUSTICE McKinnon.

 Also, Brunette presented evidence that some, if not all, of the field sobriety tests were unreliable because he suffered from two brain tumors which affected his hearing and likely his balance. There was also testimony that during the deprivation period and contrary to law enforcement procedure the officer stood outside his patrol car while Brunette was seated inside, making it unlikely the officer could observe or hear whether Brunette “belched” thus rendering the preliminary breath test unreliable. Finally, Brunette who was a Wisconsin native employed by Global Energy Services on a wind farm in Glacier County, was driving a company vehicle with Texas license plates. Brunette was unfamiliar with where the registration was located within the vehicle. The District Court did not address any of this evidence in its order.